

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

ROBERT ALFRED WILLIS,

    Plaintiff,

v.                          Civil Action No.: 2:13cv184

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## OPINION AND ORDER

This matter comes before the Court on Plaintiff Robert Alfred Willis' ("Plaintiff" or "Willis") Objections to the Report and Recommendation of the United States Magistrate Judge ("Magistrate Judge"). Doc. 16. For the reasons explained below, the Court **OVERRULES** Plaintiff's objections and **ADOPTS** the Magistrate Judge's Report & Recommendation ("R&R"). Doc. 15.

### I. BACKGROUND

Plaintiff does not object to the recitation of the procedural or factual background of this case contained in the R&R, which sets forth, inter alia, the following facts.

*A. Procedural History*

Plaintiff filed an application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") with the Social Security Administration ("SSA") on August 28, 2009, alleging a disability onset date of October 15, 2003. R&R at 1–2. The application alleged that Plaintiff suffered from bipolar disorder, anxiety, and personality disorder. Id. at 2.

Plaintiff's application was denied initially, as well as upon reconsideration.[1] Id. Willis then requested an administrative hearing, which was conducted on August 24, 2011. Id. at 2; see also R. 54. At this hearing, Administrative Law Judge ("ALJ") Alfred J. Costanzo ("Costanzo") heard testimony from Willis and his then-girlfriend Angela Corprew ("Corprew").[2] R. 58–83. During the hearing, Plaintiff amended his alleged onset date to June 22, 2009, and voluntarily withdrew his request for a hearing on his DIB claim because of the expiration of his disability insured status. R&R at 2; see also R. 78. On September 2, 2011, ALJ Costanzo dismissed the DIB claim and granted Willis SSI benefits. R&R at 2.

On October 4, 2011, Plaintiff requested a rehearing of his DIB appeal, claiming an alleged onset date prior to December 31, 2008.[3] Id. This request was granted on October 5, 2011, and a new hearing was held before ALJ Tom Duann on December 16, 2011.[4] Id.; see also R. at 28. Plaintiff and Vocational Expert ("VE") Linda Augins testified at this hearing. R&R at 2; see also R. 28. On February 17, 2012, ALJ Duann denied Plaintiff's DIB and SSI claims. R&R at 2. ALJ Duann's decision became the Commissioner's final decision on February 12, 2013, when the Appeals Council denied Plaintiff's request for review of this decision. Id.

On April 12, 2013, having exhausted his administrative remedies, Plaintiff filed the instant action, seeking judicial review of the Commissioner's final decision. Doc. 15 at 2–3. The parties filed cross motions for summary judgment, which were addressed by the R&R, filed on March 25, 2014. Doc. 15. Plaintiff filed his Objections to the R&R on April 7, 2014. Doc.

---

[1] Willis' initial application was denied on December 30, 2009. R&R at 2. Willis' request for reconsideration was denied on October 27, 2010. Id.
[2] In the transcript from this hearing, Ms. Corprew is referred to as Ms. Colburn. As discussed in the R&R, the Court will refer to her as Ms. Corprew. R&R at 2.
[3] This effectively reopened his DIB claim. R&R at 2.
[4] By granting the rehearing on the DIB claim, the SSA vacated the decision of ALJ Costanzo awarding Plaintiff SSI benefits. R&R at 2 n.3.

16. Defendant filed her Response on April 16, 2014. Doc. 17. This case is now before the Court for disposition of the R&R.

## B. *Factual Background*

Plaintiff is a forty-seven year old man with a high school education who previously worked in the construction field. R&R at 3. Plaintiff's application for benefits alleges disabilities resulting from bipolar disorder, anxiety, and personality disorder. Id.

### i. Medical records

Medical records are sparse between the alleged onset date of October 13, 2003 and Plaintiff's incarcerations ending in June 2009.[5] Id. Records show he was diagnosed on July 1, 2005 with personality disorder, and diagnosed on January 12, 2007 with manic depression. Id. While incarcerated at the Chesapeake City Jail, he began receiving treatment for bipolar disorder. Id. at 4. On September 18, 2008, Plaintiff stated to Luis F. Ignacio, M.D. that "lithium is the only thing that really helps" his bipolar disorder, and also reported to a Certified Substance Abuse Counselor ("CSAC") that the medication was causing hand tremors and that he would stay awake for two to three days at a time before "crashing." Id.; see also R. 317–8. The CSAC noted that "Plaintiff was oriented to person, place and time, was alert, had normal mood and affect, had cooperative motor behavior, and had no harmful ideations." R&R at 4; see also R. 307. On October 23, 2008, Plaintiff reported that the medications were improving his condition and that his behavior was stable. R&R at 4. On January 14, 2009, Plaintiff stated he was doing fairly well, and the medical records indicated he was "stable, calm, and cooperative." Id. On February 25, 2009, Plaintiff again stated he was "doing fine," but reported medication-related

---

[5] The Record indicates that Plaintiff was incarcerated from April 19, 2006 to January 12, 2007. R&R at 4; see also R. at 387. Plaintiff also served an eighteen-month sentence in 2008 and 2009 at the Chesapeake City Jail; while the exact dates of incarceration do not appear in the record, treatment notes from his time served there indicate he was incarcerated from May 12, 2008 to June 22, 2009 at least. R. 306–336

3

tremors. Id.; see also R. 311. On March 8, 2009, Plaintiff advised of mood problems and shaking related to an adjustment in Plaintiff's medications. R&R at 4. On June 10, 2009, Plaintiff's condition appeared to improve, as treatment notes indicated he was tolerating his medications without any side effects. Id.

Upon his release from jail, Willis sought treatment at the Portsmouth Community Health Center. Id. at 4–5. A psychiatric evaluation was performed on July 13, 2009 by Ali Aziz, M.D. Id. at 5. Dr. Aziz noted Plaintiff's past with substance abuse but that he had avoided illegal drugs for ten years, and abstained from alcohol since his incarceration. Id. Dr. Aziz also reported a "history of extreme agitation, irritability, anger, aggression, violence, and getting into fights," as well as "episodes of depression, low energy, concentration, interest, and motivation." Id.; see also R. 378. Dr. Aziz also reported past hospitalizations related to these symptoms, and observed Willis to be "restless, anxious, irritable and fidgety, and had slight hand tremors." R&R at 5; see also R. 378–79. While noting he was not suicidal or homicidal nor suffered from delusions or hallucinations, Dr. Aziz did report that Plaintiff could not concentrate. R&R at 5. Follow-up notes from February 8, 2011 indicated "occasional interrupted sleeping patterns, an irritable mood, and medication side effects of dry mouth, tremors, and polydipsia." Id. Progress notes from July 26, 2011 differ somewhat, indicating a "pretty good" mood and affect. Id.; see also R. 402.

Check-off forms from multiple physicians were also sent to the Virginia Department of Social Services ("DSS"). Id. at 5–6. On April 2, 2007, Curtis Bryan, M.D. reported that Plaintiff was unable to work for six months because of his bipolar disorder. Id. at 6. A second form by Dr. Bryan was submitted on August 6, 2007, this time reporting Plaintiff was unable to work for twelve months. Id. Dr. Aziz completed a form on July 13, 2009, reporting an inability of the

Plaintiff to work for twelve months because of bipolar disorder and a history of alcohol dependence. Id. A.S. Navarre, M.D. completed a fourth form on June 16, 2010, repeating the same diagnosis as Dr. Aziz. Id. Finally, Dr. Navarre again reported the same on May 3, 2011. Id.

Physicians with the State Agency also reviewed Plaintiff's medical records. Id. On December 28, 2009, Stonsa N. Insinna, Ph.D., LCP diagnosed Plaintiff with affective disorder and substance abuse addiction disorders.[6] Id. She found that Plaintiff's overall functioning was "mildly-to-moderately limited." Id.; see also R. 89–92. She believed that Plaintiff could perform simple, routine work. R&R at 7. On October 25, 2010, Daniel Walter, Psy.D., LCP, made substantially similar findings to Dr. Insinna. Id. Case analyst Patricia Staehr, M.D., determined that Willis did not suffer from severe physical impairments. Id.

    ii. Plaintiff's statements regarding his condition

In his first Function Report completed on October 23, 2009, Plaintiff reported being unable to focus, concentrate, or hold full-time employment. Id. He stated that without his medication he could not sleep. Id. Plaintiff reported being unable to cook elaborate meals or do regular yard work because he could not stay focused. Id. He further reported struggling to relate to other people and being constantly upset by other people, and thus only really went outside for doctor's appointments. Id. He reported not being able to read anymore because he would read the same page over and over. Id. Regarding his ability to follow instructions, Plaintiff reported that he was unable to recall the beginning of written instructions, but that he could likely follow simple instructions. Id. at 7–8.

On April 26, 2010, Plaintiff completed a second Function Report. Id. at 8. Plaintiff continued to report an inability to maintain a normal sleep pattern and an inability to focus. Id.

---

[6] The primary diagnosis was the affective disorder. R. 89.

He stated he would not remember to take his medications or maintain a personal care regimen without his girlfriend's reminders. Id. He also reported his continued inability to relate to people, saying "he hated everyone" and that he would constantly get frustrated. Id.; see also R. 288. He reported being unable to follow either written or spoken instructions, because he couldn't remember "what goes first" and his inability to hear things as they were spoken. R&R at 8; see also R. at 288.

### iii. The hearing before ALJ Costanzo

The first ALJ hearing was held on August 24, 2011. R&R at 8. Plaintiff testified that he completed the tenth grade and earned his GED while in prison. Id. He stated that his incarcerations related to his bipolar disorder and his failure to take medication for it. Id. He advised to having abstained from alcohol for five or six years. Id. at 8–9.

Regarding his employment history, Willis testified that he is licensed as a certified general carpenter and was a head carpenter with JD and W. Id. at 9. Thereafter, Plaintiff was employed as a superintendent for a commercial building operation. Id. He left this employment on a leave of absence in 2003, as a result of marital problems with his wife. Id.

Discussing his symptoms, Plaintiff described problems with memory that made him unable to perform household chores. Id. He does not drive because of his health problems. Id. He does not interact with others, because he frequently loses focus in the middle of a conversation. Id. He stated he would get irritable in public, and disliked crowds. Id. The only social interaction he cares for is when his children call. Id.

Describing his typical day, Plaintiff stated he constantly feels sleepy, sleeping for two to three hours in the afternoon each day. Id. He normally wakes up around eight a.m., eats breakfast, takes his medication, watches television, sleeps, watches television, takes his

medication, and then goes to bed. Id. Because of his inability to concentrate, he does not read books, watch long movies, or follow sports. Id.

Corprew, Plaintiff's girlfriend at the time, then testified. Id. She said that he could not help with household chores because of his medication. Id. at 10. She testified that he would sleep for more than half of the time between eight a.m. and five p.m. Id. She stated that while Plaintiff did not have anger problems while taking his medication, the medication made him "non-functional." Id.; see also R. 81.

### iv. The hearing before ALJ Duann

ALJ Duann conducted a hearing on December 16, 2011. R&R at 10. Plaintiff testified that his normal routine had not changed since the previous hearing. Id. While admitting to his past use of drugs and alcohol, he testified to having abstained from these for five years. Id. As examples of his inability to concentrate, Willis testified that he had started a grease fire on the stove while cooking bacon because he forgot about it, and that he had left the lawn mower running outside after returning indoors because he lost focus while mowing the lawn. Id. He testified that he slept about four hours during a normal eight a.m. to five p.m. workday. Id. During the period leading up to his incarceration, Plaintiff stated that he had anxiety attacks four to five times a day. Id. Finally, Plaintiff noted that he and his girlfriend were no longer together, and he was now living with friends. Id.

A VE also testified, opining "that an individual with Plaintiff's characteristics with a restriction to work only simple, routine, unskilled work of only one or two steps, low stress defined as no production paced work and occasionally interaction [sic] with the public, coworkers, and supervisors could not perform any of Plaintiff's past work." Id.; see also R. 49. However, there were jobs in the national economy for such an individual as a meter reader or

building cleaner, but if such an individual were off task twenty-percent of the time, there would be no such jobs. R&R at 10–11. In response to questioning from Plaintiff's counsel, the VE also testified that positions existed in the national economy for an individual with frequent memory lapses, but not if that person also had frequent altercations with supervisors, employees, or the public. Id. at 11.

## II.  STANDARD OF REVIEW

Pursuant to the Federal Rules of Civil Procedure, the Court reviews de novo any part of a Magistrate Judge's recommendation to which a party has properly objected. Fed. R. Civ. P. 72(b)(3). The Court may then "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Id.

In exercising de novo review, the Court analyzes the Commissioner's final decision using the same standard as that used by the Magistrate Judge. Specifically, the Court's review of the Commissioner's decision is limited to determining whether that decision was supported by substantial evidence on the record, and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)) (internal quotation marks omitted). Courts have further explained that substantial evidence is less than a preponderance of evidence, but more than a mere scintilla of evidence. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Importantly, in reviewing the ALJ's decision the Court does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." Craig, 76 F.3d at 589. Thus, if the Court finds that there was substantial evidence to support the ALJ's factual findings, even

if there was also evidence to support contrary findings, the ALJ's factual findings must be upheld.

### III. ANALYSIS

Willis disagrees with ALJ Duann's conclusion that he is not eligible for DIB and SSI, and asks this Court to reverse or remand to the Commissioner. Doc. 16 at 1. In his Motion for Summary Judgment, Willis argues that ALJ Duann committed reversible error by giving greater weight to the State Agency physicians, and not the three treating physicians. Doc. 11 at 4. Plaintiff also argued that ALJ Duann committed reversible error by considering the testimony of Corprew at the first hearing, when she did not testify at the second hearing. Id. at 9.

In the R&R, the Magistrate Judge rejects Plaintiff's arguments and recommends that the ALJ's decision be affirmed, first, because ALJ Duann gave proper weight to the different medical opinions. R&R at 14–18. Second, the Magistrate Judge found that ALJ Duann did not err in considering Corprew's testimony. R&R at 18–19.

In his objection to the R&R, Plaintiff argues that the Magistrate Judge's conclusion that substantial evidence supported ALJ Duann's decision to deny benefits is incorrect. Doc. 16 at 1. While incorporating his arguments from his Motion for Summary Judgment, Willis focuses in his objection on the failure of ALJ Duann to give greater weight to the testimony of Plaintiff's treating physicians. Id. at 2–4.

*A. The ALJ Properly Discounted the Opinions of Plaintiff's Treating Physicians*

Plaintiff's major assignment of error is the argument that ALJ Duann did not afford the proper weight to the evidence provided by the treating physicians. However, the record shows that the proper weight was given.

It is well-settled "that the opinion of a claimant's treating physician be given great weight and may be disregarded only if there is persuasive contradictory evidence." Coffman v. Bowen,

9

829 F.2d 514, 517 (4th Cir. 1987). However, the opinion is not automatically given controlling weight, as the regulations provide that controlling weight only be given if the "treating source's opinion on the issue(s) of the nature and severity of [the] impairment(s) is well-supported by medically accepted clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); see also Craig, 76 F.3d at 590. Thus, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590.

Even if the treating source's opinion is not given controlling weight, it still must be considered using the following factors: "length of the treatment relationship and the frequency of examination;" "nature and extent of the treatment relationship;" "supportability;" consistency with the record as a whole; the specialization of the physician; and any other factors. 20 C.F.R. §§ 404.1527(c)(2)–(6); 416.92 7(c)(2)–(6). Furthermore, the ALJ's unfavorable decision

> must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight

SSR 96-2, 1996 WL 374188, at *5 (S.S.A.).

ALJ Duann's decision is in accordance with the regulations and Fourth Circuit precedent. ALJ Duann did not disregard the opinions of Plaintiff's treating physicians; he found that they were "not supported by medical records or explanations." R. 21. He noted that all of the opinions were "based on the claimant's subjective complaints and self-reports, rather than actual findings and observations of the sources." Id. ALJ Duann noted that the claimant was overly dramatic at the hearing and fixated on obtaining additional benefits; thus, the ALJ did not find

Willis' subjective complaints to be credible. Id. In fact, the most that the reports proffered by the treating physicians offer are that the symptoms were "moderate at most." Id. Further, the treating source opinions opined on the disability status of Willis, which was properly discounted by ALJ Duann. Phillips v. Colvin, No. 2:13cv59, 2013 WL 6528849, at *4 (E.D. Va. Dec. 11, 2013). Thus, there was no error in discounting the testimony of the treating physicians.

B. *ALJ Duann did not err in considering the testimony of Corprew*

Plaintiff also argues in his Motion for Summary Judgment that the ALJ committed reversible error in considering the testimony of Plaintiff's former girlfriend Corprew. However, as noted by the Magistrate Judge in his R&R, the reference to it in ALJ Duann's opinion was "incredibly brief." R&R at 19; see also R. 21. It is well understood that the ALJ must consider all the evidence in the record, including statements by laypeople regarding the claimant's condition. 42 U.S.C. §§ 423(d)(5), 1382c(a)(3)(H). Plaintiff is unable to cite a single case supporting the proposition that considering the testimony from a vacated hearing is an automatic ground for reversal. Thus, the Court agrees with the Magistrate Judge's conclusion that it was not an error to consider the testimony of Corprew, and if even if it were, the error was harmless.

## IV. CONCLUSION

For the reasons discussed above, the Court concludes that ALJ Duann's decision is supported by substantial evidence in the record. Accordingly, the Court **OVERRULES** Plaintiff's objections, Doc. 16, and **ADOPTS**, in its entirety, the Magistrate Judge's Report and Recommendation, Doc. 15. The Court **DENIES** Plaintiff's Motion for Summary Judgment, **GRANTS** Defendant's Motion for Summary Judgment, and **AFFIRMS** the Recommendation of the Magistrate Judge that the final decision of the Commissioner be upheld. Accordingly, this case is **DISMISSED WITH PREJUDICE.**

Plaintiff is advised that he may appeal from this Opinion and Final Order by forwarding a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510. Said written notice must be received by the Clerk within sixty (60) days from the date of this Order. If Plaintiff wishes to proceed in forma pauperis on appeal, the application to proceed in forma pauperis is to be submitted to the Clerk, United States Court of Appeals, Fourth Circuit, 1100 E. Main Street, Richmond, Virginia 23219.

The Clerk is **REQUESTED** to send a copy of this order to all counsel of record.

It is so **ORDERED**.

/s/
Henry Coke Morgan, Jr.
Senior United States District Judge

*HENRY COKE MORGAN, JR.*
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
Date: May 8, 2014